The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



**/S/ RUSS KENDIG**

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| TIMOTHY N. PHILLIPS AND CINDY L. PHILLIPS, | CASE NO. 02-66299 |
| | ADV. NO. 09-6109 |
| Debtors. | JUDGE RUSS KENDIG |
| TIMOTHY N. PHILLIPS, SR. AND CINDY L. PHILLIPS, | |
| Plaintiffs, | |
| v. | **MEMORANDUM OF OPINION (NOT INTENDED FOR PUBLICATION)** |
| DEUTSCHE NATIONAL TRUST, et al., | |
| Defendants. | |

Now before the court is Plaintiff-debtors second motion for summary judgment, filed on July 14, 2011. Relying on 11 U.S.C. § 524(i)[1] and Federal Rule of Bankruptcy Procedure 9020, Debtors seek a contempt finding against their mortgage company for violating the discharge injunction. Deutsche Bank National Trust Company, as Trustee for the registered holders of GSAMP Trust 2005-SEA1, Mortgage Pass-Through Certifications, Series 2005-SEA1 ("Deutsche Bank"), Ocwen Loan Servicing, LLC ("Ocwen"), and MTGLQ Investors LP ("MTGLQ") (collectively "Defendants"), filed a response to the motion.

The court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is

---

[1] Debtors actually cite section 528(i), clearly an error.

proper pursuant to 28 U.S.C. § 1409. This adversary is a core proceeding under 28 U.S.C. § 157(b)(2). The following constitutes the court's findings of facts and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## BACKGROUND[2]

Debtors filed a chapter 13 case on December 30, 2002 and, following completion of payments under their plan, obtained a discharge on June 21, 2007. Through the plan, Debtors cured an $18,000+ mortgage arrearage while maintaining their postpetition monthly mortgage payments.

After the case closed, a dispute arose concerning the status of the mortgage. According to Debtors, their mortgage company contended they were not current. Debtors reopened the case and filed a motion determine the status of the mortgage. During the interim period, Debtors withheld payments on the mortgage until the matter was resolved and remitted all the payments upon reaching an agreement. On June 20, 2008, the parties entered into an agreed order that stated the mortgage was current as of June 30, 2007.

The order did not resolve the dispute between Debtors and the mortgage company. On September 4, 2009, Debtors again reopened their case, alleging the mortgage company still did not show them current. Debtors filed a complaint to hold the mortgage company and related entities in contempt for violating the discharge injunction.

## ANALYSIS

Debtors' motion for summary judgment is founded on Federal Rule of Bankruptcy Procedure 7056, incorporating Federal Rule of Civil Procedure 56 into bankruptcy practice. The court is to award summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056. The court will not reiterate the standard for a motion for summary judgment set forth in its previous opinion.

11 U.S.C. § 524(i) was added to the bankruptcy code with the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") section 202. Pub.L. No. 109-8. Section 1406 of BAPCPA provides that "the amendments made by this title shall apply only with respect to cases commenced under title 11 of the United States Code on or after the date of the enactment of this Act." Section 1501(a) of the Act provided that BAPCPA became effective one hundred and eighty days after enactment and established a general rule that BAPCPA amendments did not apply to bankruptcy cases commenced before the effective date of the Act. Since Debtors' case was filed in December 2002, well before enactment of BAPCPA, § 524(i) does not apply to this case.

Notwithstanding the inapplicability of § 524(i), Debtors also seek contempt under Federal Rule of Bankruptcy Procedure 9020 for an alleged violation of the discharge injunction. Debtors contend that the mortgage company has consistently held Debtors to be in default under

---

[2] The court fully incorporates the factual background laid out in its opinion dated December 1, 2010.

2

the mortgage note, even after entry of the agreed order finding the mortgage current. In support of their position, Debtors attached an affidavit from Debtor Timothy Phillips which contains several exhibits from Ocwen. Debtors make two arguments: first, that Ocwen repeatedly showed them one to two months behind on payments; second, that Ocwen failed to correctly calculate the principal balance on the mortgage as payments were made.

The agreed order finding the mortgage current was entered on June 20, 2008. It stated the mortgage was current as of June 30, 2007. The court must determine the import of that finding.

Bank One, the original lender, filed a proof of claim for $170,731.62 at 9.99% from the date of default. Included in the balance was an arrearage of $18,016.20, representing ten payments, foreclosure costs, late charges, and other expenses. Under the amortization schedule provided by Debtors, if no default had occurred and all payments had been timely made, the principal balance on the note, after the December 2002 payment was posted, would have been $146,834.57.

Debtors' position is that payment of the arrearage should have restored them to the balances set forth in the amortization schedule. Basic addition demonstrates a flaw in this logic. If Debtors paid $18,000.00 of the principal balance, without factoring in interest, the balance would have only been reduced to $152,000.00, short of the $146,834.57 under the amortization schedule. Defendants argue Debtors' position is incorrect because they fail to consider the impact of the accumulation of simple interest on the balance.

The problem may lie in the fact that the arrearage claim did not include the additionally-accrued but unpaid interest which Defendants added to the principal balance. The ten missed payments included in the arrearage accounted only for the interest which would have accrued if the mortgage was current. Debtors, however, had missed ten payments. When the loan was in default, not only did the interest continue to accrue, but neither principal or interest were being reduced because no payments were made. The additional interest that accrued during the default appears unaccounted for in the arrearage claim, but it is included in the proof of claim's principal balance. The question is whether it should have been included in the arrearage and, if so, whether declaring the mortgage current prevents Defendants from now collecting it.

Debtors cite a factually similar case from a sister court in this district, In re Boday, 397 B.R. 846 (Bankr. N.D. Ohio 2008). In Boday, the debtors borrowed $155,125.00 from Bank One in October 1999.[3] Id. at 848. Under the terms of the note, payments were applied first to outstanding interest, then to principal. Id. The Bodays defaulted on the note and later filed a chapter 13 case. Id. The proof of claim set forth an arrearage of more than $17,000.00. Id. The Bodays' plan was confirmed and, after a slight hiccup in post-petition payments, they completed their plan and obtained a discharge. Id. At the conclusion of their plan, the Bodays realized that Bank One had never adjusted the principal balance on their loan throughout the plan period and it had remained steady at $154,718.85. Id. They filed an action alleging a violation of the discharge injunction. Id. at 849.

The Boday case is separated from this case by one fact. The Bodays' confirmed chapter 13 plan contained the following provision:

> [U]pon successful completion of the plan, (1) all defaults would be deemed to be fully cured, (2) creditors holding mortgages were

---

[3] Debtors in this case borrowed $155,000.00 from Bank One in February 2000.

3

required to adjust their records to indicate that all arrearages had
been paid, (3) any balance due on a mortgage loan had to be ad-
justed so as to reflect the balance due in the original amortization
schedule, and (4) that any amounts owed in excess of said amorti-
zation schedules were deemed to be discharged.

Id. at 848. It is clear that if the mortgage arrearage did not include accrued interest which was not included in the delinquent payments, it would not be collectible. The plan provision in Boday specifically reinstated the mortgage as if no default had ever occurred in the payment stream from the debtors, restoring them to the position they should have been in under the original amortization schedule. To accomplish this, the arrearage had to include any unpaid interest which had been added to principal.

The Boday court, relying on Rake v. Wade, 508 U.S. 464 (1993) and 11 U.S.C. § 1322(e), determined that the lender failed to utilize accounting procedures appropriate for a chapter 13 situation. When a debtor intends to cure an arrearage, split accounting is required to track the regular monthly post-petition payments and payments on the arrearage claim. Each regular monthly post-petition payment marginally reduces the principal balance. The lender's failure to reduce the principal balance throughout the life of the plan was indicative of a failure to properly account for chapter 13 payments, resulting in a post-plan delinquency that violated the terms of the discharge injunction.

It is not entirely evident the same result applies to the instant case because this court does not use an identical chapter 13 form plan. At the time this case was filed, the court's form plan contained the following provision:

The rights of holders of claims secured by a lien or mortgage
on real property of the debtor shall be modified only to the ex-
tent of curing the default and shall result in reinstatement of the
mortgage according to its original terms, with no default in
scheduled payments. Any exception must be set forth with
specificity in Special Provisions and may require additional
motions or adversary proceedings.

The terms of this court's form plan were not as redundant as those outlined in Boday,[4] so the question is whether they have the same effect. For the reasons that follow, the court finds that

---

[4] These provisions are not uncommon. For example, a bankruptcy court in the Southern District of Ohio uses the following:

IMPORTANT NOTICE . . . Assuming all payments are made . . .
your claim(s) should be paid in such a way as to put all parties in
the same position they would have been under the original amorti-
zation schedule. This assumes that part of any arrearage claim
filed will also include unpaid principal . . . Any mortgage loan for
which disbursements are made in this plan . . . shall be deemed
current and the mortgage loan balance shall be properly adjusted
to reflect the balance as delineated in the original amortization
schedule.

In re Passavant, 444 B.R. 378, 381-82 (Bankr. S.D. Ohio 2010).

the plan provision has the same import. When the arrearage was cured, Debtors were deemed to have caught up all past payments and to have been restored to their position under the original amortization schedule. It is unnecessary to have plan provisions restate and rehash the same principal to make it "clear." It is sufficient to say what is meant – the default is cured; the mortgage is reinstated as though there had been no default.

First, this understanding fully appreciates the concept of curing a mortgage default. 11 U.S.C. § 1322(b)(5). In their plan, Debtors proposed to cure the mortgage default and maintain all post-petition payments. The intent is to restore a debtor to the place he would have been if no default occurred. *See, e.g.*, In re Collins, 2007 WL 2116416 (Bankr. E.D. Tenn. 2007) (citations omitted). "'Curing a default' [commonly] means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified.' In re Christian, 35 B.R. 229 (Bankr. Ga. 1983) (citing In re Taddeo, 685 F.2d 24, 26-27 (2nd Cir. 1982)); *see also* Litton v. Wachovia Bank (In re Litton), 330 F.3d 636 (4th Cir. 2003). Any other understanding would treat a symptom instead of the disease.

To accomplish full cure, a creditor's arrearage claim should represent "the sum of all prepetition funds that should have been paid . . . ." Epps v. Lomas Mortg. USA, Inc. (In re Epps), 110 B.R. 691, 707 (E.D. Pa. 1990) (citation omitted). An "arrearage is nothing more than a numerical representation of what is required under the parties' lending agreement to return them to their pre-default contractual status." In re Stiller, 323 B.R. 199, 212 n. 20 (Bankr. W.D. Mich. 2005). Under § 1322(e), "the amount necessary to cure [a] default[] shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law."

The promissory note signed by Debtors in this case contains the following: "[u]pon default, or if this Note is not paid at final maturity, Lender at its option, may add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid, at the rate provided in this Note but in no event at an effective total interest rate on this Note greater than the rate permitted by applicable law." (Attachment to Proof of Claim 14). This is a type of acceleration clause. *Accord* In re Hence, 358 B.R. 294 (Bankr. S.D. Tex. 2006). Cure-and-maintain chapter 13 plans operate to de-accelerate a default. *See generally* Fed. Land Bank of Louisville v. Glenn (In re Glenn), 760 F.2d 1428 (6th Cir. 1985). In accordance with the note, upon default, it appears Defendants added the unpaid interest to the principal balance. When Debtors filed a cure-and-maintain plan, thereby de-accelerating the default, Defendants should have included any amounts due as a result of the de-acceleration in the arrearage. *Cf.* Tolbert v. SN Servicing Corp. (In re Tolbert), 2011 WL 3734240 (Bankr. M.D. Ga. 2011).

Defendants' failure to include the unpaid accrued interest in the arrearage is fatal to their ability to now collect the amount. Defendants affirmatively stated the mortgage was current as of June 30, 2007 in an agreed order. By stating the mortgage was current, Defendants represented that Debtors complied with the terms of the plan and cured the arrearage. Through the agreed order, Defendants have waived any right to now assert a larger arrearage or make a contrary argument to this understanding. Debtors' confirmed plan was completed and Debtors obtained a discharge. As outlined above, their mortgage was reinstated as if no default had occurred. Permitting Defendants to make an argument to the contrary is inequitable.

With this understanding of what an arrearage is and the import of curing an arrearage, the court now turns to the facts of the case to determine if Defendants should be held in contempt for violating the discharge injunction.

5

I.   **Payment delinquency**

Debtors contend contempt is warranted because Defendants consistently showed a default in payments. Although Defendants deny this, their exhibits support Debtors' position. A Detail Transaction History is attached to Defendants' response. (Doc. 61-4). As of May 24, 2007, the transaction history shows Debtors owing for the April 24, 2007 payment. On June 30, 2008, after entry of the agreed order and receipt of thirteen additional payments, Defendants still show Debtors owe for the May 24, 2008 payment. By the court's calculations, the payment received on June 16, 2008 paid the July 2008 payment. Consequently, the court agrees with Debtors' position that Defendants showed them two months delinquent. The court is convinced that Defendants failed to bring the account current as of June 30, 2007. This perpetuated the delinquency.

If the mortgage was current through June 30, 2007, the next payment would have been due July 2007. The transaction history shows that, including the July 16, 2008 payment, Debtors had paid fourteen mortgage payments. By the court's calculations, this means Debtors were paying the mortgage in advance of payments that were due. It is not until the November 2010, well into litigation of this adversary, that the transaction history shows that Debtors are current on their mortgage.

Debtors' affidavit and exhibits also prove that Ocwen considered the loan to be delinquent. Statements dated August 14, 2007, December 26, 2009, and June 16, 2010 all indicate the loan was either delinquent or in default. Howard Handville's affidavit states that "Ocwen submitted a request to delete the delinquent reporting and report the loan as paid for the period June 2007 through October 2010." (Defendants' Resp. to M. Summ. Judg., Doc. 61-4, ¶ 11). This clearly demonstrates that the account was not current and corrective action was not taken until well after Debtors filed an adversary complaint.

Defendants summarily challenge the admissibility of Debtors' exhibits regarding the default. (Response to M. Summ. J. ¶ 3, p. 2.) The court rejects this argument for two reasons. First, as stated above, Defendants' exhibit supports Debtors' position. Second, the court is not convinced of the inadmissibility of Debtors' exhibits. *See, e.g.*, Johnson v. Memphis City Schools, 2010 WL 1957267 (W.D. Tenn. 2010). Debtor Timothy Phillips' affidavit attests to personal knowledge and receipt of the exhibits from Ocwen.

Debtors demonstrated that Ocwen failed to credit payments received under the plan. If payments were properly credited, Debtors' mortgage would have been current through June 30, 2007. The transaction history clearly shows a failure to treat the account as current through June 20, 2007. The problem persisted until late 2010, well after the order was entered. No genuine issue of material fact exists on these points. It is unquestioned that Ocwen was aware of, or should have known, that the discharge injunction was effective. Ocwen was a participant in the chapter 13 plan. The agreed order finding the mortgage current was signed by counsel on behalf of Ocwen. Ocwen's failure to properly credit the plan payments violated the discharge injunction. Further, its actions persisted even after the agreed order was signed and through the filing of the complaint by Debtors.

Debtors have demonstrated injury in the form of negative credit reporting. From August 2008 through August 2010, Ocwen showed Debtors 30-59 days late on their account. The fact that Ocwen requested remediation does not alter the fact that the negative reporting was injurious. While remediation may go to damages, the harm was done.

6

## II. The Principal Balance

Debtors also contend that Defendants violated the discharge injunction by not appropriately posting payments, resulting in overstatement of the principal balance on the mortgage note. The court agrees.

Boday and other cases establish that a mortgage creditor must use a split accounting system under a cure-and-maintain chapter 13 plan to account for two streams of payments: the post-petition mortgage maintenance payments and the prepetition arrearage payments. *See* Boday, 397 B.R. 846; In re Carlton, 437 B.R. 412 (Bankr. N.D. Ala. 2010); In re Bagne, 219 B.R. 272 (Bankr. E.D. Cal. 1998). As Carlton explains,

> First, the plan may provide for payment of the on-going, post-petition installments as they become due under the mortgage contract, and those installments are to be treated and applied as if there were no default and no arrears. Second, the plan may provide for the cure of the prepetition arrears by spreading their payment over a reasonable time, which is usually the life of the plan.

437 B.R. 412, 418. The former payments will be applied to both principal and interest, so each time a payment is made, some reduction of principal occurs. It is evident in this case, as in Boday, Defendants' failed to accurately account for payments. Between May 30, 2004[5] and August 9, 2006, the principal balance never decreased. Debtors, however, were making their post-petition mortgage payments by conduit and therefore some reduction in principal should have occurred with each post-petition regular monthly payment. Since it did not, Debtors have shown an accounting problem that violates the discharge injunction.

Debtors received a discharge on June 21, 2007. Their mortgage account was declared current as of June 30, 2007. Under the original amortization schedule, Debtors' principal balance would have been $127,570.45 after the June 2007 payment. The Detail Transaction History shows a balance of $141,655.24 after the final plan payments were entered on May 24, 2007. Clearly, there is an accounting problem. The principal balance had not been reduced during the plan term, nor did it reflect full reinstatement of the mortgage upon completion of plan payments. For these reasons, Debtors' motion for contempt has merit.

## CONCLUSION

Debtors have established Defendants' violation of the discharge injunction. Although their mortgage account was deemed current as of June 30, 2007, Ocwen failed to properly credit payments to achieve a current status. As a result, the account was delinquent and in default, resulting in injury to Debtors. Debtors were harmed by the negative credit reporting and by Defendants' failure to correctly post plan payments, resulting in overstatement of the principal balance. Debtors' motion for summary judgment is granted.

An order will be entered immediately.

---

[5] This is the first date noted in the Detail Transaction History. Defendant does not offer an explanation as to why the history does not start from the filing of Debtors' chapter 13 plan.

7

# # #

**Service List:**

Robert Goldberger
13 Park Ave W
#300
Mansfield, OH 44902

Christian E. Niklas
Shapiro, Van Ess, Phillips & Barragate
4805 Montgomery Road
Suite 320
Norwood, OH 45212

Ocwen Loan Servicing LLC
c/o Martha Spaner
Shapiro & Felty LLP
1500 W Third St, Ste 400
Cleveland, OH 44113

MTGLQ Investors, L.P.
Ocwen Federal Bank, FSB c/o
12560 Ingenuity Drive
Orlando, FL 32826

Ocwen Loan Servicing, L.P.
Research Dept.
P.O. Box 785035
Orlando, FL 32878-5055

8

09-06109-rk    Doc 63    FILED 09/29/11    ENTERED 09/29/11 10:40:36    Page 8 of 8

# # #

**Service List:**

Robert Goldberger
13 Park Ave W
#300
Mansfield, OH 44902

Christian E. Niklas
Shapiro, Van Ess, Phillips & Barragate
4805 Montgomery Road
Suite 320
Norwood, OH 45212

Ocwen Loan Servicing LLC
c/o Martha Spaner
Shapiro & Felty LLP
1500 W Third St, Ste 400
Cleveland, OH 44113

MTGLQ Investors, L.P.
Ocwen Federal Bank, FSB c/o
12560 Ingenuity Drive
Orlando, FL 32826

Ocwen Loan Servicing, L.P.
Research Dept.
P.O. Box 785035
Orlando, FL 32878-5055