**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its**



Russ Kendig
United States Bankruptcy Judge

**Dated: 02:52 PM March 9, 2012**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | CHAPTER 7 |
| | ) | |
| TIMOTHY N. PHILLIPS and CINDY L. PHILLIPS, | ) | CASE NO. 02-66299 |
| | ) | |
| | ) | ADV. NO. 09-6109 |
| Debtors. | ) | |
| ———————————— | ) | JUDGE RUSS KENDIG |
| TIMOTHY N. PHILLIPS, SR. and CINDY L. PHILLIPS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT FOR PUBLICATION)** |
| DEUTSCHE NATIONAL TRUST, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Now before the court is the determination of damages following the court's granting Plaintiffs' second motion for summary judgment on September 29, 2011 and the evidentiary hearing on damages held on January 9, 2012.

The court has jurisdiction over this case pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is

proper pursuant to 28 U.S.C. § 1409. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(O).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

On July 14, 2011, Plaintiffs filed a second motion for summary judgment ("motion") seeking a finding of contempt against Defendants for violation of the discharge injunction. Defendants filed a response to Plaintiffs' motion on August 12, 2011. On September 29, 2011, the court entered a memorandum of opinion and corresponding order that granted Plaintiffs' second motion for summary judgment, finding that Defendants violated the discharge injunction.

On January 9, 2012, the court held an evidentiary hearing to determine damages recoverable for Defendants' violation of the discharge injunction. Robert Goldberger, on behalf of Plaintiffs, and Phillip C. Barragate and Steven M. Palmer, on behalf of Defendants, appeared personally at the evidentiary hearing. Both Debtors testified on their own behalf and Gina Johnson, Senior Loan Analyst, testified on behalf of Defendants.

Prior to the hearing, on January 4, 2012, Debtors filed a witness list and their proposed findings of fact and conclusions of law. In these pleadings, Debtors requested damages of $50.00 per day from June 30, 2007 through September 29, 2011, for a total of $58,300.00. Defendants also filed witness and exhibit lists and proposed findings of fact and conclusions of law on January 4, 2012.

Following the evidentiary hearing, the court entered a scheduling order on January 10, 2012 to provide the parties an opportunity to brief the issue of damages. On January 17, 2012, Defendants filed a brief in support of its position and, on January 27, 2012, Debtors filed a brief in support of their position.

On February 3, 2012, the court entered an order that provided Debtors fourteen days to file a statement of attorney's fees and expenses for this matter. Additionally, it provided Defendants an opportunity to respond to the statement of attorney's fees and expenses and provided both parties an opportunity to request further hearing on attorney's fees and expenses. On February 16, 2012, Debtors' attorney filed an application for attorney's fees seeking $4,125.00 for 27.5 hours at the rate of $150.00 per hour. On March 2, 2012, the court entered an order wherein both parties stipulated to attorney's fees in the total amount of $3,750.00.

## LAW AND ARGUMENT

The court previously found Defendants in violation of the discharge injunction in its memorandum of opinion entered on September 29, 2011. The court incorporates the findings contained in its September 29, 2011 memorandum opinion as if set forth herein.

When a creditor is found to be in violation of the discharge injunction, it is subject to

sanctions at the court's discretion.  In re Perviz, 302 B.R. 357, 370 (Bankr. N.D. Ohio 2003) (citing Arruda v. Sears, Roebuck & Co., 273 B.R. 332, 345 (D.R.I. 2002)).  The sanctions may be either paid to the complainant as compensation for damages caused by the contemnor, i.e. compensatory damages, or payable to the court with the caveat that the contemnor can avoid payment by performing the act required by the court's order.  United States v. Bayshore Assocs., Inc., 934 F.2d 1391, 1400-01 (6th Cir. 1991); In re Lohmeyer, 365 B.R. 746, 752 (Bankr. N.D. Ohio 2007).  Here, Debtors requested damages in the total amount of $58,300.00.

A.     *Actual Damages*

In the Northern District of Ohio, bankruptcy courts typically allow damages for violations of the discharge injunction when a debtor has established actual injury.  In re McCool, 446 B.R. 819, 823 (Bankr. N.D. Ohio 2010) (citing Archer v. Macomb Cnty. Bank, 853 F.2d 497, 500 (6th Cir. 1988)); Lohmeyer, 365 B.R. at 752; In re Mayer, 254 B.R. 396, 397-98 (Bankr. N.D. Ohio 2000).  The debtor bears the burden to prove actual injury by a preponderance of the evidence.  McCool, 446 B.R. at 823-24.  The debtor must support his claim of actual injury by establishing "adequate proof" and cannot rely on speculation.  Id. at 824 (quoting Archer, 853 F.2d at 499-500).

1. Inability to Borrow Money

Debtors assert that during the period of June 20, 2008 through October 31, 2010, Defendants reported Debtors delinquent to credit reporting agencies.  As a result, Debtors had to pay higher interest rates to borrow money than they would have if Defendants reported the correct information to the credit reporting agencies.

Debtors specifically describe being denied a student loan for their daughter from the U.S. Department of Education.  Instead, Debtors obtained a loan from a private lender with an interest rate of 12%.  At the hearing, Debtor, Cindy Phillips, testified that they were denied by two lenders before obtaining the student loan from a third lender.  In another instance, Mrs. Phillips testified that she attempted to obtain a refinance with other mortgage companies to get away from Defendants but was denied on the basis that Debtors were behind on their payments with Defendants.

The court is not convinced that Debtors incurred any actual damages as a result of Defendants' reports to credit reporting agencies.  Debtors failed to provide any proof that they actually paid higher interest rates due to Defendants' actions.  Debtors testified about being unable to obtain certain loans and, instead, having to borrow money at higher interest rates.  However, Debtors failed to show any causal relationship, except by speculation, between Defendants' actions and the higher interest rates.

Debtors could have submitted copies of their credit report showing Defendants' entries to illustrate the potential harm that these entries caused to their credit score.  Additionally, Debtors could have submitted evidence that potential creditors denied Debtors credit for a specific reason.  Debtors failed to submit any documentation of these types. It is possible, and to some degree likely, that Debtors had to pay a higher interest rate and were denied credit because of

their bankruptcy filing. Without any definitive showing by Debtors that Defendants' actions caused their inability to borrow money at lower interest rates, the court cannot find any actual damages to Debtors based upon mere speculation alone.

### 2. Mental/Emotional Distress

In some instances, courts have found actual injury in the form of mental/emotional distress resulting from a creditor's violation of the discharge injunction. To establish such injury absent any demonstrable monetary losses, the debtor must have "clearly suffered some appreciable emotional/mental harm" and the creditor's actions must have been severe in nature. Perviz, 302 B.R. at 371. Such a burden of proof can be met through actual medical testimony, but is not required. Id. Rather, courts have found that "the greater the extent of the creditor's violation, the less corroborating evidence, including medical testimony," is required to establish mental/emotional distress. Id. The converse is also true. Id.

Debtors assert, in their post-hearing brief, that they are entitled to damages for mental/emotional distress as a result of Defendants' actions. They premise this assertion on the fact that nearly five years after discharge, they are still involved in litigation with Defendants. Further, Mrs. Phillips testified about the volume and frequency of the calls received from Defendants, as well as the long period of time during which these calls were made.

Debtors provided no actual medical testimony to assert mental/emotional harm. Thus, the court must look solely at Defendants' violation, which must be severe in nature, to establish mental/emotional distress in the absence of corroborating medical testimony. In Perviz, the court awarded damages for mental/emotional distress without hearing medical testimony. 302 B.R. at 371-72. However, debtors presented evidence to show that the creditor made a significant volume of calls to debtors, up to eight times per day. Id. at 371. In addition, the creditor also sent a large volume of correspondence to debtors. Id. at 372.

Debtors have not established that Defendants caused mental/emotional distress to the extent necessary to receive damages. The court does not question whether Defendants' phone calls and correspondence caused Debtors stress and frustration. Mrs. Phillips testified that Defendants telephoned her house two times per day and sent notices of foreclosure. The court recognizes that this is a significant volume of telephone calls to receive from a creditor attempting to collect money. That said, Debtors did not represent any adverse effects from Defendants' phone calls or correspondence except stress and frustration. Absent corroborating medical testimony, simple stress and frustration are not sufficient to support an award of damages for mental/emotional distress. See In re Baker, 140 B.R. 88 (D. Vt. 1992) (awarding no damages for emotional distress on basis that "susceptibility to nausea, shakes and headaches from ... stress was insufficient"). Thus, the court finds that Debtors are not entitled to damages for mental/emotional distress.

### 3. Attorney's Fees

As discussed above, On March 2, 2012, the court entered an order wherein both parties stipulated to attorney's fees in the total amount of $3,750.00.

B.      *Punitive Damages*

Punitive damages are meant to punish for wrongful conduct and serve as a deterrent of further wrongful conduct.  Perviz, 302 B.R. at 372.  While there is a question of whether bankruptcy courts have the authority to punish parties for violations of the discharge injunction through punitive damages, courts in the Northern District of Ohio have awarded punitive damages.  *See* id. ("bankruptcy courts have the inherent power to punish parties for their contemptuous violation of the discharge injunction through the imposition of punitive damages"); In re Latanowich, 207 B.R. 326 (Bankr. D. Mass. 1997). *Contra* Lohmeyer, 365 B.R. at 750 ("weight of authority is that bankruptcy courts lack authority to punish and impose sanctions" for violation of discharge injunction); Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1192-95 (9th Cir. 2003).

Punitive damages are only appropriate "where there is some sort of nefarious or otherwise malevolent conduct."  Perviz, 302 B.R. at 372 (citing Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986)).  For violations of the discharge injunction, courts have awarded punitive damages only "where there exists a complete and utter disrespect for the bankruptcy laws."  Perviz, 302 B.R. at 372 (citing In re Arnold, 206 B.R. 560, 568 (Bankr. N.D. Ala. 1997)).

The court must determine whether Defendants' actions constitute a complete and utter disrespect for the bankruptcy laws.  As discussed above, the court is not convinced that Debtors were substantially injured by Defendants' conduct.  But the court is bothered by Defendants' conduct nonetheless.  Ms. Johnson testified that, during telephone calls between Defendants and Debtors, Defendants requested a copy of the order deeming the mortgage current[1] from Debtors, but never received a copy from Debtors.[2]  Ms. Johnson also testified that Defendants had access to PACER[3] and could have looked up the order on PACER.  She also stated that Defendants' standard procedure is to request a copy of the order from debtors and Defendants did not deviate from this procedure to look up the order itself.

The court believes that Defendants have no excuse for continually harassing Debtors and refusing to look up the order on PACER.  Whether Defendants ever received a copy of the order from Debtors is irrelevant because Defendants had actual knowledge of the order and should have obtained a copy of it from PACER.  First, Defendants were a party to the order with its counsel, Martha Spanner, signing the order on its behalf and received service of the order from the court.  Defendants never explained why the order was not in its records since its counsel

---

[1] The court refers to the June 20, 2008 order that deemed the mortgage was current as of June 30, 2007.

[2] Mrs. Phillips testified that she faxed the requested order to Defendants on at least one occasion, if not multiple times.

[3] PACER, an acronym for Public Access to Court Electronic Records, is a site commonly used by creditors to obtain information about specific bankruptcy cases.

agreed to the order on its behalf and it received service of the order from the court. Second, Debtors continually advised Defendants of the order and Defendants cannot now claim ignorance of it. Defendants' failure to find the order after Debtors continually advised Defendants of its contents constitutes a complete and utter disrespect for the bankruptcy laws. As such, punitive damages are appropriate.

The court must now determine the amount of punitive damages appropriate in this matter. In Perviz, the court awarded $8,000.00 in punitive damages for the creditor's overall conduct in the matter. 302 B.R. at 373. The creditor made hundreds of harassing telephone calls and sent numerous letters to the debtors. Id. Even more egregiously, the creditor's actions became more aggressive as time went on and the debtors attempted to stop the creditor's harassment. Id. The court found the creditor had knowledge of the discharge and chose to ignore it. Id.

In Baker, the district court affirmed the bankruptcy court's award of $10,000.00 in punitive damages for violation of the automatic stay. 140 B.R. 88. While the creditor argued that it had no knowledge of the automatic stay, both the debtor and her attorney spoke with the creditor several times to inform it of the debtor's bankruptcy. Id. Baker found that the "only explanation for the bank's violation of the automatic stay can be malice or bad faith." Id.; accord In re Bishop, 296 B.R. 890, 899 (Bankr. S.D. Ga. 2003) (awarding punitive damages of $50,000.00 for violation of automatic stay); In re Ocasio, 272 B.R. 815, 827 (B.A.P. 1st Cir. 2002) (affirming award of $9,000.00 in punitive damages for violation of automatic stay); In re McCormack, 203 B.R. 521 (Bankr. D.N.H. 1996) (awarding punitive damages of $10,000.00 for violation of automatic stay).

In the instant matter, the court finds that punitive damages in the amount of $10,000.00 are appropriate based upon Defendants' egregious conduct. Defendants' conduct expressed a repeated attitude of "we don't care." The court notes that the Baker case was in 1992. The value of the dollar has dropped since 1992, according to calculations based on the Consumer Price Index, such that it would take $1.64 in 2012 to equal the value of one dollar in 1992. See Inflation Calculator, http://www.dollartimes.com/calculators/inflation.htm (last visited Mar. 8, 2012).

Typically, punitive damages are only appropriate when an award of compensatory or actual damages is appropriate. In situations where a court does not award compensatory or actual damages, but awards attorneys' fees, attorneys' fees have been found to constitute actual damages. See In re Prusan, No. 09-49716-CEC, 2010 Bankr. LEXIS 699, at 9 n.4 (Bankr. E.D.N.Y. Mar. 2, 2010); Baker, 140 B.R. 88.

In the instant matter, both parties stipulated to an award of attorney's fees in the total amount of $3,750.00 by order entered on March 2, 2012. Thus, the court is able to award punitive damages despite its denial of actual or compensatory damages, except for attorney's fees, as discussed above.

## CONCLUSION

Accordingly, the court awards punitive damages in the amount of $10,000.00 to Debtors.

An order will be entered contemporaneously with this memorandum of opinion.

#      #      #

**<u>Service List:</u>**

Robert Goldberger
13 Park Ave W
#300
Mansfield, OH 44902

Steven M. Palmer
Shapiro, Van Ess, Phillips & Barragate
1100 Superior Avenue #950
Cleveland, OH 44113